Mr. Justice Strong-
delivered the opinion of the court:
The third section of the Act March 12, 1803, (12 Stat. L., 820,) which alone authorizes a suit against the United States for the recovery of the proceeds of sale of captured or abandoned property, enacts that “ any person claiming to have been the owner of any such abandoned or captured property may, at any time within two years after the suppression of the rebellion, prefer his claim to the proceeds thereof in the Court of Claims, and, on proof to' the satisfaction of the court of his ownership of said property, of his right to the proceeds thereof, and that he has never given any aid or comfort to the present rebellion, to receive the residue of said proceeds after the deduction of any purchase-money which may have been paid, together with the expense of transportation and sale of said property, and any other lawful expenses attending the disposition thereof.”
*33 Under this enactment, the claimant in the court below sought to recover the proceeds of four hundred and ninety-three bales of cotton which were seized by the Army of the United States at Savannah, in December, 1864. After its seizure the cotton was turned over to the agents of the Treasury Department and sold, and the proceeds of the sale were paid into the Treasury. Of the whole number of bales captured, one hundred and ninety-six-belonged to the claimant, but the remainder he had received as a cotton-factor from various persons, and had made advances thereon in money of the Oonfederate. States. The aggregate of these advances was $51,153.17. It does not appear from the finding of facts who these different owners were, how much had been advanced to each, or what was the value of the advances, in money of the United States. Upon this state of facts the Court of Claims gave judgment in favor of the claimant, not only for the proceeds of sale of the cotton which belonged to him in his own right, but also for the entire proceeds of that which he had received as a factor and upon which he had made advances. Whether this judgment was correct on such a state of facts is the question now presented, and the answer to it must depend upon the antecedent inquiry whether, as to the cotton upon which the claimant had made partial advances as a factor, he can be considered the owner thereof and having a right to its proceeds, within the meaning of the act of Congress. No doubt a factor who has made advances upon goods consigned to him may be regarded, in a limited sense and to the extent of his advances, as an owner. Tet in reality he has but a lien, with a right of possession of the goods for its security. He may protect that possession by suit against a trespasser upon it, and he may sell the property to re-imburse advances, remaining ,however, accountable to his consignor for any surplus. But after all he is not the real owner. He is only an agent of the owner for certain purposes. The owner may, at any time before his. factor has sold the goods, reclaim the possession upon paying the advances made, with interest and expenses. He has hot lost his ownership by committing the custody of the goods to a factor and by receiving advances upon them. He is still entitled to the proceeds of any sale which may be made, even by his agent, the factor, subject only to a charge of the advances and expenses. A factor, therefore, notwithstanding he may have made advances *34 upon the property consigned, to him, has bub a limited right. That right is sometimes called a special property, but it is never regarded as a general ownership. At most it is no more than ownership of a lien or charge upon the property. Such is unquestionably the doctrine of the common law. And there is nothing in any statute affecting this case that changes the doctrine. Certainly the statutes of Georgia, whence this case comes, have no such effect. In the Code of that [State of 1861, while a factor’s lien is recognized and declared to extend to all balances on general account, and to attach to the proceeds of sale of goods consigned as well as to the goods themselves, (Code, p. 410,) there is nothing that declares he has anything more than a lien protected by his possession. Injuries to that possession may indeed be redressed by action in his name, and it may be assumed that upon contracts of sale made by him he may sue, but all this is perfectly consistent with the continuance of the general ownership in his consignors until he has made a sale. And there is a very significant clause in the statutes of the State, which shows that a factor there has not the general property. In section 2969 of the article respecting injuries to personalty generally, (Code of 186.1, p. 552,) it is enacted that “ in cases of bailments, where the possession is in the bailee, a trespass committed during the existence of the bailment will give a right of action to the bailee for the interference with his special property, and a concurrent right of action to the bailor for interference with his general property.” If this applies to the case of bailment to a factor, as is supposed by the defendant in error, it is a clear declaration that the factor’s right does not extend beyond a special property, a mere right to hold for a particular purpose, and that it does not amount to ownership of the property consigned to him. And there is nothing in the new Code of Georgia or in any of the decisions of the Supreme Court that is variant from this. Admit that a factor may maintain an action when his possession is disturbed, still it is a question what may he recover? Under the statutes of Georgia he can recover only for the injury which his special property, namely, his lien, has sustained. For all beyond that the general owner may sue. ' The property of that owner is not vested in his factor.
If, then, it be, as was said by the-Chief-Justice in Klein’s Case, (7 C. Cls., R., 240, 13 Wall,, 128,) that the Government con *35 stituted itself tbe trustee of captured or abandoned property for tbe original owners thereof, it is bard to see bow tbe trust can exist for the benefit of tbe owner of a special property therein beyond the extent of bis interest, which, as we have seen, in case of a factor, is measured by the amount of bis advances and expenses.
For all beyond that, by tbe law of Georgia, tbe original owner who consigned the goods to tbe factor might sue, and for that original owner tbe Government became a trustee of all beyond tbe factor’s interest, according to tbe doctrine of Kleiv/s Case.
In this view of tbe case in band it is clear that tbe claimant is not tbe “owner of the” captured “property,” “having a right to the proceeds thereof,” within tbe meaning of the Abandoned or captured property Act. He owns of tbe cotton consigned to him nothing but a lien for bis advances and expenses, and he is therefore not entitled to tbe entire proceeds of tbe sale of tbe property.
There are other considerations that support this conclusion. Plainly it was the intention of Congress, manifested in tbe statute, that no person should be permitted to recover out of tbe Treasury any of the proceeds of sale of tbe property captured or abandoned except those who bad given no aid or comfort to tbe rebellion. But if a factor who has made advances, no matter bow small, may recover the entire proceeds of a consignment made to him, not only what be has advanced, but tbe share of bis principal, tbe intention of tbe law may be wholly defeated. He may have received consignments from persons most active in promoting the rebellion, and be may have-advanced only one dollar on each bale of cotton consigned. If, now, be can recover tbe entire net proceeds of tbe sale of such cotton paid into tbe Treasury, bis consignors, through him, using him as a cover, escape entirely from tbe operation of tbe provision of the statute, that no one shall have a standing in tbe Court of Claims who has given aid and comfort to tbe rebellion. A construction of the law which admits of such a consequence cannot be correct. The intention of Congress is not thus to be evaded.
There is yet another consideration not to be overlooked. Under tbe Act March 3,1863, (12 Stat. L., 765,) amending the act to establish the Court of Claims, that court has power to consider and determine all set-offs, counter-claims, claims for damages, whether liquidated or unliquidated, or other claims *36 which the Government may have against any claimant in the court, and render judgment against such claimant if he be found indebted to the Government. Gan a debtor to the United States evade his liability to a judgment against him by consigning his property to a factor and obtaining some advances ? May the factor recover all that is in the Treasury, though the Government may have large claims against his principals, who are the real parties in interest ? We cannot think the acts of Congress admit of such an interpretation. These considerations show that the “ owner,” spoken of in the third section of the Abandoned or captured property Act, u having a right to the proceeds thereof,” is he who has the legal interest in those proceeds, and that a factor who made advances before the capture can at' most recover only to the extent of his lien.
The court below rested their judgment upon Carroll's Case, (13 Wall., 151; 7 O. Gis. R., 255;) but that case, in our opinion, has little analogy to this. There an administratrix of a deceased persou was the claimant, and it was held to be no bar to the suit that the decedent gave aid and comfort to the rebellion, the property having been taken after his death from the administratrix and not from him, and the administratrix was declared to be the owner within the meaning of the statute. Undoubtedly she was the full legal owner, entitled, both in law and in equity, to the entire property. Hers was the only title which existed at the time of the capture. Through whom she acquired it was deemed immaterial. It was sufficient that no other person had a definite right. This is no such case. Here there are owners, both in law and in equity, other than the claimant, and the statute has opened the Court of Claims for them if they have never given aid or comfort to the rebellion. The present claimant, at most, is entitled to no moré than the net proceeds of sale of his own cotton — one hundred and ninety-six bales — and the amount of his advances on the other cotton, reducing those advances to their worth in the money of the United States at the time the advances were made.
The judgment is reversed, and the cause is remitted with instructions to proceed in conformity with this opinion.